UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CHRISTA ROBEY, individually and on
behalf of all others similarly
situated,

                              Plaintiff,

            - against -

PVH CORPORATION,

                              Defendant.

---

19-cv-6147 (JGK)

MEMORANDUM OPINION AND
ORDER

JOHN G. KOELTL, District Judge:

The plaintiff, Christa Robey, has filed an amended
putative class action complaint (the "Amended Complaint")
against the defendant, PVH Corporation ("PVH"), asserting claims
under the New Jersey Consumer Fraud Act ("NJCFA"), the New
Jersey Truth in Consumer Contract, Warranty, and Notice Act
("NJTCCWNA"), and breach of the implied covenant of good faith
and fair dealing under New Jersey law, in connection with her
purchase of two items at a Tommy Hilfiger store owned and
operated by the defendant, PVH Corporation.[1] The plaintiff claims
the defendant engaged in a deceptive sales price practice,
whereby sales tags, signs, and receipts presented customers with
a sale price and an allegedly fictitious reference price, to

---

[1] The original plaintiff in this action, Vincent Tripicchio, filed a complaint
in this Court, but then voluntarily dismissed the action without prejudice
pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i). ECF No. 21. The
following day, Tripicchio's counsel filed an Amended Complaint, whereby the
current plaintiff Christa Robey joined the action and took the place of
Tripicchio, bringing the same claims. Am. Compl. ECF No. 22.

induce the customer into believing they had received a bargain.
The defendant moves to dismiss the Amended Complaint pursuant to
Federal Rules of Civil Procedure 12(b)(6). For the following
reasons, the defendant's motion to dismiss is **granted.**

## I.

When deciding a motion to dismiss pursuant to Rule
12(b)(6), the allegations in the complaint are accepted as true,
and all reasonable inferences must be drawn in a plaintiff's
favor. See McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191
(2d Cir. 2007). The Court's function on a motion to dismiss is
"not to weigh the evidence that might be presented at trial but
merely to determine whether the complaint itself is legally
sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir.
1985).[2] The Court should not dismiss the complaint if a plaintiff
has stated "enough facts to state a claim to relief that is
plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S.
544, 570 (2007). "A claim has facial plausibility when the
plaintiff pleads factual content that allows the court to
draw the reasonable inference that the defendant is liable for
the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662,
678 (2009).

---

[2] Unless otherwise noted, all alterations, citations, footnotes, and internal
quotation marks are omitted in quoted text.

While the Court should construe factual allegations in the light most favorable to a plaintiff on a motion to dismiss pursuant to Rule 12(b)(6), "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions." Id. When presented with a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider documents that are referenced in the complaint, documents that a plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, or matters of which judicial notice may be taken. See Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002).

In federal court, claims "that sound in fraud must meet the heightened pleading standard of Rule 9(b)," by stating with particularity the circumstances constituting the fraud. Twersky v. Yeshiva Univ., 993 F. Supp. 2d 429, 433 (S.D.N.Y.), aff'd 579 F. App'x 7 (2d Cir. 2014); Fed. R. Civ. P. 9(b). A claim charging fraud should "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 99 (2d Cir. 2007). Further, a plaintiff must "plead those events which give rise to a strong inference that the defendant had an intent

to defraud, knowledge of the falsity, or a reckless disregard for the truth." Caputo v. Pfizer, Inc., 267 F.3d 181, 191 (2d Cir. 2001).

## II.

## A.

The following allegations are accepted as true for purposes of the motion to dismiss.

The plaintiff is an individual and a citizen of New Jersey. Am. Compl. ¶ 17. The defendant PVH Corporation is a Delaware corporation with its headquarters and primary offices located in New York. Id. ¶ 20. The defendant owns and operates eight Tommy Hilfiger outlet stores in New Jersey. Id. ¶ 21 The defendant's products are also sold by certain third-party retail companies, both in their New Jersey stores and online. Id. ¶¶ 49-50.

On or about October 20, 2019, Robey visited a Tommy Hilfiger store, owned and operated by the defendant, at the Gloucester Premium Outlets in Blackwood, New Jersey (the "Tommy Hilfiger store"). Id. ¶ 76. During the visit, she observed a sign in the front window that read "UP TO 60% off entire store." Id., Ex. I. Robey purchased two items: a pair of sunglasses and a wallet. The sunglasses had a tag noting a "PROMO PRICE" of $29.40, which the tag represented was a 40% discount from the reference price of $49.00. Id. ¶ 80-82 & Exs. A, D. Robey purchased the wallet at a "PROMO PRICE" of $26.99, discounted in

4

the amount of 40% from the reference price of $44.99. Id. ¶¶ 92-94 & Exs. B, D. The receipt for the purchases indicated that Robey had received "TOTAL SAVINGS" of $37.60 as a result of the listed discounts. Id. ¶ 104 & Ex. D.

**B.**

The plaintiff alleges that the defendant's Tommy Hilfiger stores in New Jersey adopted and implemented an allegedly unlawful pricing policy through which it advertised fraudulent sale prices next to fictitious and inflated reference prices listed on the tags of each item, signs within the stores, and on the plaintiff's receipts issued following purchase. Id. ¶¶ 18-19, 66. Instead, the plaintiff alleges, "the lower, purportedly-discounted sale price is – or is very close to – the true, every-day, regular price at which the item is typically sold by [PVH] and other retailers in New Jersey." Id. ¶ 12. As such, the plaintiff claims the price tag were "wholly fictitious." Id. ¶ 11.

The plaintiff cites to a number of academic articles regarding what is allegedly a widespread practice in the retail industry. Id. ¶¶ 26-30. The plaintiff also alleges she and her counsel conducted an "investigation," including "multiple visits to multiple Tommy Hilfiger Company Stores in New Jersey, on multiple dates, to observe the extent and frequency of the sales and discounts offered by [PVH] on various items." Id. ¶ 49. The

plaintiff also claims her counsel "visited to physical stores and websites of other retailers . . . which sell [PVH's] products in New Jersey, on multiple occasions and dates," to observe the advertised pricing and frequency of sales and discounts. Id.

Finally, the plaintiff claims her counsel has been "monitoring" the websites of retail companies that sell the defendant's clothing "for several years via a proprietary data harvesting system," that "tracks virtually every item offered for sale . . . every day." Id. ¶ 50. These observations allegedly "confirm[] that these retailers generally offer [PVH's] Tommy Hilfiger-branded products on constant 'sale' from their advertised prices, and in most cases rarely if ever offer the products at the advertised reference price." Id. The plaintiff also emphasizes a two-month period during which all products at the Tommy Hilfiger stores in New Jersey were sold at a discounted price rather than the reference prices listed on the tags. Id. ¶ 56.

The plaintiff concludes that the defendant adopted and implemented these allegedly unlawful practices "[a]s a matter of uniform policy." Id. ¶ 51. The plaintiff further alleges that such practices reflect the defendant's intent to create a false impression in the minds of customers that the reference prices

reflected the items' true values and that the items previously were sold at such a price. Id. ¶¶ 60, 62-63, 74.

The plaintiff does not allege that she made any effort to return the goods, nor does she allege she was deprived of any opportunity to return the goods for a refund. The plaintiff similarly has not alleged that the goods are worth less than what she paid for them, have any defects, or that, as a result of the purchases she made on October 29, 2019, she missed out on some other opportunity or discount.

### III.

The plaintiff has asserted three claims for relief against the defendant under New Jersey law: (1) a violation of the NJCFA; (2) a violation of the NJTCCWNA; and, (3) a breach of contract under the implied covenant of good faith and fair dealing. The plaintiff also seeks injunctive and declaratory relief pursuant to the New Jersey Uniform Declaratory Judgment Act.[3] As explained below, the plaintiff has failed to plead facts sufficient to state a claim.

---

[3] N.J. Stat. Ann. § 2A:16-51 to 62. "It is settled law that, as a procedural remedy, the federal rules respecting declaratory judgment actions, apply in diversity cases." Fed. Kemper Ins. Co. v. Rauscher, 807 F.2d 345, 352 (3d Cir. 1986). Because the plaintiff does not allege adequately any underlying claims for relief and because claims for injunctive and declaratory relief are derivative, dismissal of the request for injunctive and declaratory relief is also proper. Muhlbaier v. Specialized Loan Servicing LLC, No. 1:18-cv-00125, 2018 WL 3238832, at *3 (D.N.J. 2018) (dismissing a claim for declaratory judgment because an alleged declaratory judgment cause of action standing alone "is simply not a claim.").

**A.**

The plaintiff first alleges a violation of the NJCFA. In relevant part, the NJFCA prohibits the use of "any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission" done "in connection with the sale or advertisement of any merchandise . . . whether or not any person has in fact been misled, deceived or damaged thereby." N.J. Stat. Ann. § 56:8-2. The NJCFA provides a private cause of action for "[a]ny person who suffers any <u>ascertainable loss</u> of moneys or property, real or personal, as a result of the use or employment by another person of any method, act, or practice declared unlawful under [the] act." <u>Id.</u> § 56:8-19 (emphasis added). To state a claim under the NJCFA, a private litigant must establish "(1) unlawful conduct by defendant; (2) an ascertainable loss by plaintiff; and (3) a causal relationship between the unlawful conduct and the ascertainable loss." <u>Mercado v. Bank of Am., N.A.</u>, No. 12-cv-01123, 2012 WL 5629749, at *2 (D.N.J. Nov. 15, 2012) (quoting <u>Bosland v. Warnock Dodge, Inc.</u>, 964 A.2d 741, 749 (N.J. 2009)). Because "the NJCFA is a fraud-based statute, the heightened pleading standard of Rule 9(b) applies." <u>Dicuio v. Brother Int'l Corp.</u>, No. 11-cv-1447, 2012 WL 3278917, at *3 (D.N.J. Aug.

9, 2012); Frederico v. Home Depot, 507 F.3d 188, 200

(3d Cir. 2007).

The New Jersey Supreme Court has held that "[t]he plain

language of the [NJCFA] unmistakably makes a claim of

ascertainable loss a prerequisite for a private cause of

action." D'Agostino v. Maldonado, 78 A.3d 527, 537 (N.J. 2013)

(collecting cases). While the term "ascertainable loss" is not

defined in the NJCFA, the New Jersey Supreme Court has held that

the plaintiff must demonstrate loss that is "quantifiable or

measurable," not "hypothetical or illusory." Id.; Thiedemann v.

Mercedes-Benz USA, LLC, 872 A.2d 783, 795 (N.J. 2005)

("Subjective assertions without more are insufficient to satisfy

the requirement of an ascertainable loss that is expressly

necessary for access to the CFA remedies.")). In cases of

alleged false advertising, product defect, or other

misrepresentation cases, courts applying New Jersey law have

required plaintiffs to establish that they suffered an

ascertainable loss either by demonstrating that they suffered an

"out-of-pocket" loss, or that they lost the "benefit-of-[their]-

bargain" by purchasing a product that was "ultimately worth less

than the product that was promised." DiCicco v. PVH Corp., No.

19-cv-11092, 2020 WL 5237250, at *5-6 (S.D.N.Y. Sept. 2, 2020);

Mladenov v. Wegmans Food Mkts., Inc., 124 F. Supp. 3d 360, 375

(D.N.J. 2015); D'Agostino, 78 A.3d at 541-43. As described

below, the plaintiff failed to plead facts demonstrating an ascertainable loss under either theory, and, as a result, has failed to state a claim under the NJCFA.[4]

1.

A plaintiff seeking to demonstrate an ascertainable loss as a result of an "out-of-pocket" loss, must plead facts sufficient to establish that the plaintiff "spent money, or in the future, needs to spend money addressing the NJCFA violation," (such as repair costs), or that the products purchased are "essentially worthless." DiCicco, 2020 WL 5237250, at *5. To show an ascertainable loss through evidence of a lost "benefit of the bargain," a plaintiff must show that the product the plaintiff received was "ultimately worth less than the product promised," including situations where "a product is falsely held out as having some objective quality of features it actually lacks." DiCicco, 2020 WL 5237250, at *6; see also Mladenov, 124 F. Supp. 3d at 375.

---

[4] Despite the plaintiff's arguments to the contrary, even if the defendant truly had failed to comply with N.J. Admin. Code § 13:45A-9.6, as the plaintiff alleges, Am. Compl. ¶ 156, this alone is insufficient to demonstrate that the plaintiff suffered an ascertainable loss within the meaning of the NJCFA, to support a private right of action. See Hoffman v. Macy's, Inc., No. A-6131-08T3, 2011 WL 6585, at *2-3 (N.J. Super. Ct. App. Div. June 28, 2010) (per curiam) (finding that dismissal was proper on the ascertainable loss element irrespective of whether the first element of an unlawful practice was satisfied). While the New Jersey Attorney General need not show an injury to bring an action for violation of the NJCFA, private plaintiffs can only do so when they have suffered is an ascertainable loss. Thiedemann, 872 A.2d at794 (describing the "ascertainable loss" requirement as "an integral check upon the balance struck by the CFA between the consuming public and the sellers of goods.").

The plaintiff alleges that, in purchasing the two items based on the reference prices, she suffered an out-of-pocket loss because "she was induced to pay [PVH] money based on the misleading and deceptive statements of [PVH]," Am. Compl. ¶ 169. The plaintiff seeks to rely on certain cases in which courts applying New Jersey law have found that plaintiffs suffered an out-of-pocket loss in the amount of the purchase price, when the essential characteristics of a product have been misrepresented or the plaintiff was forced to expend additional funds following the purchase of a product to make the product usable. See, e.g., Lee v. Carter-Reed Co., 4 A.3d 561, 580 (N.J. 2010) (out-of-pocket losses suffered each time a class member purchased a dietary supplement pill that did not provide the benefits represented by the defendant); Dicuio, 2012 WL 3278917, at *8 (finding that the plaintiffs sufficiently pleaded out-of-pocket losses under the NJCFA where they were forced to expend unanticipated funds due to an omission in the defendant's advertising). However, the plaintiff in this case has not alleged that the products she received were defective, that the defendant misrepresented the essential nature of the products, or that she had to expend additional money as a result of such defects or misrepresentations. In Lee, the plaintiffs alleged that the dietary supplement offered "none of the benefits" advertised and that product was "worthless." 4 A.3d at 579-80.

11

The plaintiff in this case has not alleged that the purchased goods were "worthless," or that the goods were not suitable for her use. Similarly, the Dicuio court found that the plaintiffs had demonstrated an "out-of-pocket" loss for the value of replacement printer cartridges. Because the printers required users to replace all three of the printer's cartridges when only one was depleted, but the user manual suggested that only one cartridge needed to be replaced at a time, the plaintiffs were misled by the defendant's false advertising and induced to purchase replacement printer cartridges. By contrast, in this case, the plaintiff has not alleged any hidden post-purchase expenses as a result of false advertising. See also DiCicco, 2020 WL 5237250, at *5 (distinguishing Dicuio and Lee from plaintiffs' claims regarding allegedly false reference prices, nearly identical to those in this case).

Lastly, the plaintiff seeks to rely on Munning v. Gap, Inc., in which the court found that the plaintiff sufficiently alleged an "out-of-pocket" ascertainable loss within the meaning of the NJCFA, by alleging that she paid the defendant approximately $108 in reliance on the false advertising that she was receiving merchandise discounted from a higher reference price. 238 F. Supp. 3d 1195, 1201 (N.D. Cal. 2017). But, the Munning court relied heavily on certain general statements in Dicuio to support its conclusion, and ignored that the

plaintiffs in Dicuio were required to spend additional money after the purchase of the relevant printer, due to a characteristic of the good that was not advertised.  For this reason, a court in this district declined to follow the Munning court's holding in a more recent case, concerning a nearly identical NJCFA claim, relating to allegedly false discount pricing. DiCicco, 2020 WL 5237250, at *5. The DiCiccio court's analysis is persuasive, and this Court joins the DiCiccio court in declining to follow the Munning court's interpretation of the "out-of-pocket" rule. The plaintiff has not alleged that she received products that were unsuitable for their intended use, or that she needed to incur additional expenses as the result of misrepresentations by the defendant. As such, the plaintiff has failed to allege facts sufficient to demonstrate an ascertainable loss, based on the out-of-pocket rule.

2.

The plaintiff also argues that she suffered an ascertainable loss within the meaning of the NJCFA when she failed to receive the "full benefit of the bargain promised by" the defendant, because she did not receive "monetary savings equal to the promised '% off' discount and/or the difference between the reference and purchase prices." Id. ¶¶ 163, 166. Put differently, she alleges that she did not receive the benefit of the bargain, because she did not receive the savings which she

13

believed she would receive, based on the defendant's tags
and signs.

Courts applying New Jersey law have found "[t]he benefit-
of-the-bargain rule [to apply] when a plaintiff cannot
demonstrate an out-of-pocket loss, but seeks to recoup what it
will cost for him to replace what he reasonably believed he was
purchasing," Dicuio, 2012 WL 3278917, at *7, or when the product
received is "ultimately worth less than the product that was
promised." Mladnov, 124 F. Supp. 3d at 375. While "there is no
requirement that the product actually received be defective or
deficient," the plaintiff must "allege a reasonable expectation
about the product induced by a misrepresentation, and that this
expectation was not met." Smajlaj v. Campbell Soup Co., 782
F.Supp.2d 84, 99 (D.N.J. 2011) (finding plaintiffs had pleaded
facts sufficient to establish an "ascertainable loss" because
soup falsely advertised as having reduced sodium deprived
plaintiffs of the "benefit of [their] bargain"); Talalai v.
Cooper Tire & Rubber Co., 823 A.2d 888, 898 (N.J. Super. Ct. Law
Div. 2001) (finding plaintiffs had pleaded sufficient facts to
demonstrate an ascertainable loss under the NJCFA when the
defendant failed to represent certain defects in tires purchased
by the plaintiffs).

In this case, the plaintiff has not pleaded that she
received less than or something different from what she was

14

promised—namely, functioning sunglasses and a useable wallet.
Further, she has not alleged any dissatisfaction with the items
or that she attempted to return them. See Waldron v. Jos. A.
Bank Clothiers, Inc., No. 12-cv-2060, 2013 WL 12131719, at *4
(D.N.J. Jan. 28, 2013) (holding the plaintiffs failed to show
ascertainable loss under a "benefit-of-the-bargain" theory,
because the plaintiffs failed to allege they "were dissatisfied
with the product, demanded a refund, or had their
refund refused.").

To support her "benefit of the bargain" theory for
demonstrating an ascertainable loss, the plaintiff relies
principally on two cases, Furst v. Einstein Moomjy, Inc., 860
A.2d 435, 442 (N.J. 2004), and Cannon v. Ashburn Corp., No. 16-
cv-1452, 2016 WL 7130913, at *7 (D.N.J. Dec. 7, 2016), yet
ignores important distinguishing facts between such cases and
the plaintiff's complaint. In Furst, the plaintiff purchased a
discounted carpet, only to discover upon delivery that the
carpet was defective and nonconforming. Furst, 860 A.2d at 438-
440. The Supreme Court of New Jersey held that the damages for
the ascertainable loss should be replacement value of the
carpet, rather than the discount price. However, unlike here,
the plaintiffs in Furst purchased a defective, nonconforming
product, and asserted that the pre-discount or replacement price

15

was the true value of the good.[5] Id. at 440. In Cannon, while the plaintiffs alleged that the defendant advertised false original prices for bottles of discounted wine, the court noted that wines are "unique" goods, that a wine bottle's original price related to its unique quality, and that the plaintiff alleged that the "bottles they received were not the bottles promised to them." Cannon, 2016 WL 7130913, at *8 & n.5. But in this case, the plaintiff does not allege that she was misled as to the quality or nature of the purchased products.

Because the plaintiff has not alleged that she received a defective product, or a product that was of lower quality than or different from what she actually paid for, the plaintiff's alleged injury is not cognizable as an ascertainable loss under a "benefit of the bargain" theory. As such, this Court joins a growing number of courts, in finding that complaints based solely on a plaintiff's disappointment over not receiving an advertised discount at the time of purchase has not suffered an "ascertainable loss" under the NJCFA. See, e.g., DiCiccio, 2020

---

[5] Further, the New Jersey Supreme Court only considered the question of how to compute damages for the "ascertainable loss," not whether such a loss occurred. Furst, 860 A.2d at 439 (noting that the defendants do not contest the trial court's entering of summary judgment for the plaintiff, finding that defendants violated the NJCFA in the sale of the carpet). As the DiCiccio court noted, the plaintiff's sweeping reading of Furst is at odds with the New Jersey Supreme Court's later decision to deny certiorari in Hoffman, in which a seller's misrepresentation of a product's manufacturer's suggested retail price was found insufficient to demonstrate an ascertainable loss. DiCiccio, 2020 WL 5237250, at *7 n.10; cf. Hoffman v. Macy's, 2011 WL 6585 at *1, *2. (N.J. Super. Ct. App. Div. June 28, 2010) (per curiam), cert. denied, 6 A.3d 441 (N.J. 2010).

WL 5237250, at *6-*8 (dismissing similar claims raised by a
plaintiff against the same defendant); Hoffman v. Macy's, 2011
WL 6585 at *1-*2 (holding defendant's alleged misrepresentation
of a manufacturer's suggested retail price was insufficient to
establish an "ascertainable loss" under the NJCFA).

Other courts interpreting state statutes similar to the
NJFCA also "have rejected misrepresentation claims based solely
on a theory that the defendant's misrepresentation deprived the
plaintiff of an opportunity to make a better-informed choice
whether to buy the product." Belcastro v. Burberry Limited, No.
16-cv-1080, 2017 WL 744596, at *4 (S.D.N.Y. Feb. 23, 2017). See,
e.g., id. at *1 (granting a motion to dismiss a "But-I-Thought-
I-Was-Getting-A-Bargain" claim based on Florida consumer
protection law); Belcastro v. Burberry Ltd., No. 16-cv-1080,
2017 WL 5991782, at *1 (S.D.N.Y. Dec. 1, 2017) (upon repleading,
finding no actual loss or injury under New York and Florida law
where the plaintiff "did not allege that the shirts he purchased
were worth less than the amount he paid or that they were in any
objective way different from what he believed he was buying");
Gerboc v. ContextLogic, Inc., 867 F.3d 675, 681 (6th Cir. 2017)
(finding that the plaintiff suffered no loss or injury
cognizable under the Ohio Consumer Sales Practices Act where he
"got what he paid for: a $27 item that was offered as a $27 item
and that works like a $27 item."); Kim v. Carter's Inc., 598

17

F.3d 362, 365 (7th Cir. 2010) (finding no actual pecuniary loss under Illinois Consumer Fraud and Deceptive Business Practices Act where the plaintiffs did not allege that the product was defective or worth less than what they actually paid); Shaulis v. Nordstrom Inc., 120 F. Supp. 3d 40, 52 (D. Mass. 2015), aff'd, 865 F.3d 1 (1st Cir. 2017) (finding no cognizable injury under Massachusetts Consumer Protection Act where the alleged injury was based on the plaintiff's subjective belief as to the nature of the value of the product she received and she did not allege any defects).[6]

Accordingly, the plaintiff has failed to plead a necessary element under the NJCFA, and therefore failed to state a claim on which relief can be granted.

**B.**

The plaintiff also alleges a violation of the NJTCCWNA. Under the NJTCCWNA, a seller is prohibited from offering any "consumer warranty, notice or sign" containing "any provision

---

[6] The plaintiff notes a Ninth Circuit Court of Appeals case holding that the plaintiffs' subjective assertions of value based on false advertising can support a finding of a cognizable economic injury. See Hinojos v. Kohl's Corp., 718 F.3d 1098, 1105 (9th Cir. 2013) (holding that a consumer who relies on a product label and challenges a misrepresentation contained therein has standing to assert an economic injury under California's Unfair Competition Law and Fair Advertising Law). However, irrespective of what California law may require, the NJCFA requires plaintiffs to demonstrate an "ascertainable loss" based on more than "subjective assertions" or disappointment. See Thiedemann, 872 A.2d at 795 ("Plaintiffs needed to produce specific proofs to support or infer a quantifiable loss in respect of their benefit-of-the-bargain claim; subjective assertions without more are insufficient to satisfy the requirement of an ascertainable loss that is expressly necessary for access to the [NJ]CFA remedies.").

that violates any clearly established legal right of a consumer
or responsibility of a seller . . . as established by State or
Federal law." N.J. Stat. Ann. § 56:12-15 (emphasis added). To
state a cause of action under the NJTCCWNA, the plaintiff must
prove four elements: (1) that the defendant was a "seller";
(2) that the defendant offered or entered into a "written
consumer contract or [gave] or display[ed] any written consumer
warranty, notice or sign"; (3) that the aforementioned writing
contained a provision that violated a clearly established legal
right of the consumer; and (4) that the plaintiff is an
"aggrieved consumer." See Spade v. Select Comfort Corp., 181
A.3d 969, 976 (N.J. 2018); N.J.S.A. 56:12-15, -17. "[NJ]TCCWNA
does not establish consumer rights or seller responsibilities,"
and instead "bolsters rights and responsibilities established by
other laws. Watkins v. DineEquity, Inc., 591 F. App'x 132, 134
(3d Cir. 2014). Here, the plaintiff has failed to plead facts
sufficient under Rule 9(b) to establish that plaintiff is an
"aggrieved customer" or that the defendant violated any "clearly
established legal right" of the plaintiff, sufficient to support
a cause of action under NJTCCWNA.

First, the plaintiff has failed to plead facts sufficient
to demonstrate she would qualify as an "aggrieved consumer"
under the NJTCCWNA.  The term is not defined within the statute,
but the New Jersey Supreme Court has interpreted the term to

require a consumer to have "suffered adverse consequences as a result of the defendant's regulatory violation." Spade, 181 A.3d at 981 (2018) (holding that although a defendant had violated certain New Jersey Furniture Delivery Regulations, the consumer was not an aggrieved consumer where the plaintiff "ha[d] suffered no harm" because the consumer's "furniture was delivered conforming and on schedule," and the consumer "incurred no monetary damages or adverse consequences"). Although the Spade court clarified that the requisite harm is not "limited to injury compensable by monetary damages," id. at 980, courts have required plaintiffs to demonstrate that a plaintiff was "deterred from taking certain actions, pursuing certain remedies, or if he did not receive the contracted-for goods." Gundell v. Sleepy's Inc., No. 15-cv-7365 , 2019 WL 6040004, at *3 (D.N.J. Nov. 14, 2019)(collecting cases); Truglio v. Planet Fitness, Inc., 360 F. Supp. 3d 274, 280 (D.N.J. 2018) (reviewing cases and holding that plaintiff was not an "aggrieved customer" under the NJTCCWNA because she "received what she contracted for—the gym membership—and also did not suffer the type of economic consequences necessary to assert a TCCWNA claim"). Robey has not demonstrated she made any attempt to seek a refund and was rebuffed. Nor does she claim that the goods are worth less than what she paid. The plaintiff has presented no authority to support the proposition

20

that the NJTCCWNA considers a consumer to be aggrieved, merely because the consumer did not receive the windfall that the consumer thought the consumer had at the time of sale.

Because the plaintiff is not an "aggrieved consumer" under the NJTCCWNA, her claim under that statute must be dismissed. In addition, there are defects in the plaintiff's pleadings of the "clearly established legal right of the consumer" that she relies on for the predicate to a violation of the NJTCCWNA."

The plaintiff cites the alleged violations of the NJCFA as proof that the defendant violated her clearly established legal rights. See Am. Compl. ¶ 176. But, the plaintiff has failed to state a claim under the NJCFA, and thus the alleged violation of the NJCFA cannot provide a basis for the NJTCCWNA claim. See Grisafi v. Sony Elecs. Inc., No. 18-cv-8494, 2019 WL 1930756, at *9 (D.N.J. Apr. 30, 2019); Wilson v. Kia Motors Am., Inc., No. 13-cv-1069, 2015 WL 3903540 (D.N.J. June 25, 2015) ("Plaintiff here pleads no such [ascertainable] loss and her [NJCFA] claim fails as a matter of law. As a result, Plaintiff cannot establish a violation of a 'clearly established legal right' under the [NJ]CFA and therefore cannot, by proxy, establish a violation of the [NJ]TCCWNA."), appeal dismissed, No. 15-cv-2626 (3rd Cir. Nov. 18, 2015). Because the plaintiff has failed to assert a cognizable claim for a violation of the NJCFA, the claim for a violation of the NJTCCWNA, based on a

21

violation of the NJCFA must be dismissed. See DiCiccio, 2020 WL
5237250 at *8.

The plaintiff has also alleged violations of the NJTCCWNA
based upon the defendant's alleged failure to comply with a New
Jersey pricing regulation, which prohibits the "use of a
fictitious former price." N.J.A.C. § 13:45A-9.6(a). While
regulatory violations can constitute violations of "clearly
established legal right[s]" within the meaning of the statute,
Spade, 181 A.3d at 978, the plaintiff has failed to plead facts
with the specificity that Rule 9(b) requires to state a claim
that the defendants violated the regulation at issue.

While N.J.A.C. § 13:45A-9.6(a) prohibits the use of
"fictious former prices," N.J.A.C. § 13:45A-9.6(b) defines a
fictious former price as one that cannot be substantiated by the
seller, based on any one of three kinds of proof: (1) prices at
which a "substantial number of sales" of the product, or
comparable product was sold in the same "trade area" in the 60
days immediately prior to, or after, the date the sales price
was advertised, (2) prices at which the product was "actively
and openly" offered by the seller for at least 28 out of the
prior 90 days, or (3) that the price does not exceed the
supplier cost plus the "usual and customary mark-up" used by the
seller in the sale of the product or comparable products.
N.J.A.C. § 13:45A-9.6(b)(1)-(3). While the plaintiff claims to

22

have conducted an "investigation," the plaintiff has failed to allege with specificity that the investigation was sufficient to establish that the price cited was a "fictitious former price," in violation of N.J.A.C. § 13:45A-9.6, such that none of the regulation's three alternative safe-harbors would apply. See DiCiccio, 2020 WL 5237250, at *3-4.

The plaintiff also cites to a federal regulation, 16 C.F.R. § 233.2, as a basis for her NJTCCWNA claim. Am. Compl. ¶ 177. However, this regulation is a guideline published by the Federal Trade Commission ("FTC") for use in interpreting the Federal Trade Commission Act ("FTCA"). See Braynina v. TJX Companies, Inc., No. 15-cv-5897, 2016 WL 5374134, at *6 (S.D.N.Y. Sept. 26, 2016). The FTCA does not provide for any private right of action, United States v. Philip Morris Inc., 263 F. Supp. 2d 72, 78 (D.D.C. 2003), and courts applying New Jersey law have "rejected [NJ]TCCWNA claims based on other statutes that would not have granted plaintiffs a private right of action." Mladenov, 124 F. Supp. 3d at 380; see also Castro v. Sovran Self Storage, Inc., 114 F. Supp. 3d 204, 218 (D.N.J. 2015) (dismissing TCCWNA claim brought for violation of the New Jersey Insurance statute, which does not provide for private right of action). Therefore, the alleged violation of the FTC guideline, which corresponds to a federal statute that itself does not provide for a private cause of action, cannot sustain a claim

for relief under the NJTCCWNA. Thus, the plaintiff has failed to allege a claim under the NJTCCWNA.

## C.

Finally, the plaintiff alleges that the defendant breached the implied covenant of good faith and fair dealing. Am. Compl. ¶¶ 185-86. "[E]very contract in New Jersey contains an implied covenant of good faith and fair dealing," and it requires that "neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." Sons of Thunder, Inc. v. Borden, Inc., 690 A.2d 575, 587 (N.J. 1997). "Although the implied covenant of good faith and fair dealing cannot override an express term in a contract, a party's performance under a contract may breach that implied covenant even though that performance does not violate a pertinent express term." Wade v. Kessler Inst., 798 A.2d 1251, 1259-60 (N.J. 2002). Under New Jersey law, the party claiming a breach of the covenant of good faith and fair dealing must provide evidence that the party alleged to have acted in bad faith has "engaged in some conduct that denied the benefit of the bargain originally intended by the parties." Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assocs., 864 A.2d 387, 396 (N.J. 2005) (collecting cases). As discussed above, the plaintiff's allegations do not support a conclusion that the defendant had intent to ruin the

plaintiff's enjoyment of the fruits of her contract with the defendant: a pair of sunglasses and a wallet.  The parties entered into a sales contract for goods, not for a discount. Indeed, just as the plaintiff has failed to plead facts sufficient to demonstrate that she was denied the benefit of the bargain promised, the plaintiff also does not plead facts sufficient to demonstrate that the defendant acted with bad faith to deprive her of the enjoyment of the fruits of the contract.

**CONCLUSION**

The Court has considered all the arguments of the parties. To the extent not specifically addressed above, the remaining arguments are either moot or without merit. For the foregoing reasons, the defendant's motion to dismiss is **granted.**

Although courts in the Second Circuit are instructed to give "due regard to the liberal spirit of Rule 15 by ensuring plaintiffs at least one opportunity to replead," Metzler Inv. Gmbh v. Chipotle Mexican Grill, Inc., 970 F.3d 133, 146 (2d Cir. 2020), the plaintiff has already had one opportunity to amend her complaint and the deficiencies noted above are significant.

Nevertheless, if the plaintiff seeks to file an amended complaint, she must move to amend the complaint within 30 days of the date this Memorandum Opinion and Order is issued. Any request to file an amended complaint should include a copy of

25

the proposed amended complaint and state with particularity why such a request would not be futile. The Clerk is directed to close all pending motions.

**SO ORDERED.**

Dated:     New York, New York
           October 1, 2020

                                        _____
                                           John G. Koeltl
                                    United States District Judge

26